# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| **SOLAS OLED LTD.,**<br>*Plaintiff*,<br><br>v.<br><br>**APPLE INC.,**<br>*Defendant.* | §<br>§<br>§<br>§   CIVIL ACTION 6:19-cv-00537-ADA<br>§<br>§<br>§<br>§ |

## ORDER DENYING DEFENDANT APPLE'S
## MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a)

Came on for consideration this date the Motion of Defendant Apple Inc. ("Apple") to transfer under 28 U.S.C. § 1404(a), filed on January 21, 2020. ECF No. 23. Plaintiff Solas OLED Ltd. ("Solas") responded on January 30, 2020 (ECF No. 29) and Apple replied on February 7, 2020. (ECF No. 31). After careful consideration of the above briefings, the Court **DENIES** Apple's motion to transfer the case to the Northern District of California for the reasons described below.

### I. Factual Background and Procedural History

Solas filed this lawsuit on September 12, 2019 alleging infringement of U.S. Patent Nos. 6,072,450, 7,446,338, and 7,573,068. ECF No. 1. According to Solas, the '450 Patent, titled "Display Apparatus," "relates to a display apparatus, and more particularly to an electroluminescent display apparatus with a matrix display including [electroluminescent] elements." ECF No. 1, Ex. 1, 1:5–9. The '338 Patent, titled "Display Panel," "relates to a display panel using a light-emitting element." ECF No. 1, Ex. 2, 1:14–15. The '068 Patent, titled "Transistor array substrate and display panel," "relates to a transistor array substrate having a

1

plurality of transistors and, more particularly, to a display panel using light-emitting elements which cause self-emission when a current is supplied by the transistor array substrate." ECF No. 1, Ex. 3, 1:16–20. Solas alleges that certain products with organic light-emitting diode (OLED) displays such as particular iPhone, Apple Watch, and MacBook Pro models infringe on the '450, '338, and '068 Patents. ECF No. 1, ¶ 6. Apple filed a motion to transfer venue under 28 U.S.C. § 1404(a) requesting that the case be transferred to the Northern District of California ("NDCA"). ECF No. 23 at 1.

## II.     Standard of Review

Title 28 U.S.C. § 1404(a) provides that, for the convenience of parties and witnesses, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented. 28 U.S.C. § 1404(a). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). "The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the destination venue." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (*Volkswagen II*) (quoting 28 U.S.C. § 1404(a)). Once this requirement has been met, the party moving for transfer carries the burden of showing good cause. *Volkswagen II*, 545 F.3d at 314. ("When viewed in the context of § 1404(a), to show good cause means that a moving party, in order to support its claim for a transfer, must . . . clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'") (quoting 28 U.S.C. § 1404(a)).

In the Fifth Circuit, the "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (*Volkswagen I*) (citing to *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.*

A plaintiff's choice of venue is not an independent factor in the venue transfer analysis, and courts must not give inordinate weight to a plaintiff's choice of venue. *Volkswagen II*, 545 F.3d at 314 n.10 ("[W]hile a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege."). However, "when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Id.* at 315.

A court may "consider undisputed facts outside the pleadings, but it must draw all reasonable inferences and resolve all factual conflicts in favor of the non-moving party." *Weatherford Tech. Holdings, LLC v. Tesco Corp.*, No. 2:17-CV-00456-JRG, 2018 WL 4620636, at *2 (E.D. Tex. May 22, 2018). The briefings submitted by Apple and Solas primarily focused on the relative ease of access to sources of proof and convenience of witnesses, and the Court has

taken their additional arguments into consideration in determining whether to grant the Motion to Transfer.

### III. Discussion regarding transfer to the Northern District of California

Both parties agree that NDCA would be a proper venue, and the suit could have been filed in NDCA.

#### a. Relative ease of access to sources of proof

In considering the relative ease of access to sources of proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored. *Volkswagen II*, 545 F.3d at 316. Apple argues that this factor weighs in favor of transfer because the "bulk of relevant evidence and witnesses" is in the NDCA. ECF No. 23 at 6. More specifically, Apple asserts that "the vast majority of the design, development, and implementation of the OLED displays" occurs in the NDCA and that "all of the likely witnesses on this topic are located in the NDCA." *Id.* at 6–7 (citing Declaration of Shihchang Chang In Supp. of Mot. to Transfer ("Chang Decl."), ¶¶ 6–7). Apple further asserts that the likely witnesses and documents "concerning the marketing, sales, and financial information" as well as the licensing for the OLED displays are in the NDCA. *Id.* at 7 (citing Declaration of Mark Rollins In Supp. of Mot. to Transfer ("Rollins Decl."), ¶¶ 12, 15–21). Apple points to six specific employees that it contends would likely be witnesses in the case, all of whom reside in the NDCA. *Id.* at 3–4 (citing Rollins Decl., ¶¶ 12, 15–21; Chang Decl., ¶¶ 6–9). Finally, Apple asserts that no unique sources of proof exist in the Western District of Texas ("WDTX") as Solas has no physical presence in the WDTX, no third-party witnesses reside in the WDTX, and the likely witnesses and relevant documents are in the NDCA. *Id.* at 7.

In its response, Solas argues that the litigation focuses on the OLED displays that are "mainly designed and made by Samsung Display Co., LG Display (Korea), and other Asian-based

companies," so the third-party suppliers possess the relevant sources of proof. ECF No. 29 at 3 (citing ECF No. 23 at 4). Solas points to Samsung's production of over 800,000 pages of documents for similar patent-infringement litigation as an example of the ease of access to sources of proof. ECF No. 29 at 4. (citing *Solas OLED Ltd. v. Samsung Display Co., et al.*, No. 2:19-cv-00152 (E.D. Tex.), ECF No. 15 (amended complaint)). Likewise, Solas refers to its case with LG Display in a similar patent infringement action where LG has already produced technical documents concerning its OLED products. ECF No. 29 at 5. (citing *Solas OLED Ltd. v. LG Display Co., Ltd., et al.*, No. 6:19-cv-00236). Solas argues that no burden exists for electronically transferring the electronic documents to the WDTX. ECF No. 29 at 4–5.

In addition, Samsung has informed Solas of its intention to file a motion to intervene to become a party in this case since the case "alleges infringement based on components supplied by Samsung." *Id.* (quoting Declaration of Reza Mirzaie In Support of Solas OLED Ltd.'s Opposition to Motion to Transfer Venue ("Mirzaie Decl."), Ex. H). Samsung also has identified potentially ten relevant witnesses with OLED and/or closely related knowledge. *Id.* at 5. Seven of the witnesses live in Asia and would have no meaningful difference in convenience between the WDTX and the NDCA. *Id.* Two of the witnesses live within 100 miles of the WDTX. *Id.* Thus, Solas argues that Samsung's production of sources of evidence in Texas are more relevant and point against transfer. *Id.* at 4.

Solas also argues that Apple's sources of proof do not alter the factor analysis. Solas contends that the knowledge possessed by the employees chosen by Apple would likely not exceed the knowledge from the witnesses provided by Samsung. *Id.* at 6. In addition, Solas asserts that the method of Apple's selection of witnesses is unclear and may only serve as a method to "game the system" to support a motion to transfer. *Id.* (quoting *Fintiv, Inc. v. Apple Inc.*, 6:18-CV-00372-

ADA, 2019 WL 4743678, at *4 (W.D. Tex. Sept. 13, 2019). Solas argues that there are 7,000 employees working at the Apple campus in Austin. This is in response to this non-specific method of selection and particularly notes that several display engineers appear to work in Austin. *Id.* at 6–7.

Apple responds by reiterating that the "vast majority of the design and implementation of the OLED displays" and that the six likely Apple witnesses are in the NDCA. ECF No. 31 at 2. Apple asserts that the likely witnesses are "particularly knowledgeable on the topics for which they were identified." *Id.* Apple also asserts that the employees cited by Solas are display engineers that do not have any involvement with the OLED displays, so they are irrelevant to the factor analysis. *Id.* at 2–3, n. 2.

Apple agrees that the relevant engineers of the third-party suppliers of the OLED displays are all located in Asia. *Id.* at 3. Apple notes though that two of its four suppliers—Tianma Microelectronics Co. (China) and Japan Display Inc. (Japan)—are not parties to any suit against Solas, so it would not be reasonable to expect production of documents or witnesses from those suppliers. *Id.* In addition, while LG Display is a defendant in an action against Solas before this Court, the OLED engineers located in Asia cannot be compelled to produce documents or provide witnesses regardless of venue. *Id.* Apple further argues that Samsung's OLED engineers are in Asia, and the employees identified by Samsung are not knowledgeable on OLED displays. *Id.* at 3–4 (citing Mirzaie Decl., Ex. I at 6–7). Apple also argues that Samsung's production of documents for its case against Solas likely occurred with Solas's lead counsel located in California whereas no evidence exists that Samsung has any sources of proof in Texas. *Id.* at 4. Finally, Apple points to Samsung's potential intervention in the case as a favorable factor. *Id.* Apple asserts that the NDCA is more convenient than the WDTX since the Samsung engineers located in Korea could

fly directly to the NDCA on several available non-stop flights each day which are not available to Waco or Austin. *Id.* (citing Declaration of John M. Guaranga, Exs. 7–9).

In coming to its conclusion, the Court considered the location of the relevant documents and witnesses. *See Volkswagen II*, 545 F.3d at 316. As Apple is the accused infringer, Apple likely possesses the bulk of the relevant documents for this case. *See, e.g.*, *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) ("In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location."). Therefore, in accordance with Fifth Circuit precedent, the Court finds that the location of the documents relevant in this case weighs towards transfer.[1]

When determining the weight and impact of the location of witnesses, this Court looks at the totality of the circumstances, including but not limited to, "the witness's title and relevant experience, the likelihood that a witness may have relevant information, the number of witnesses, the location of those witnesses, whether the testimony of those witnesses goes to an element of a claim, the amount of public information available to the parties, etc." *Fintiv,* 2019 WL 4743678, at *8. The Court reasons that while international travel is burdensome regardless of destination, the addition of five to ten hours of travel time (with some itineraries extending the trip by twenty

---

[1] As noted previously in *Fintiv*, the Court believes that this factor conflicts with the realities of modern patent litigation. *Fintiv,* 2019 WL 4743678, at *4. Most documents produced in modern patent litigation exist as electronic documents on a party's server. In this Court's view, there is no difference in the relative ease of access to sources of proof from the transferor district as compared to the transferee district when the vast bulk of documents are electronic. District courts—particularly those with patent-heavy dockets which have very significant document productions—have recently begun to acknowledge this reality. *Uniloc USA Inc. v. Samsung Elecs. Am.*, No. 2:16-cv-00642-JRG, ECF No. 216 at 8-9 (E.D. Tex. Apr. 19, 2017) ("Despite the absence of newer cases acknowledging that in today's digital world computer stored documents are readily moveable to almost anywhere at the click of a mouse, the Court finds it odd to ignore this reality in favor of a fictional analysis that has more to do with early Xerox machines than modern server forms."). However, under current Fifth Circuit precedent, the physical location of electronic document does affect the outcome of this factor. *See, e.g., Volkswagen II*, 545 F.3d at 316.

or more hours) when traveling to the WDTX as opposed to the NDCA is somewhat significant. *See* ECF No. 31 at 4 (citing Declaration of John M. Guaranga, Exs. 7–9). Thus, obtaining the testimony of the third-party engineers would be more difficult in the WDTX as opposed to the NDCA. Solas provides two employees identified by Samsung that could potentially have relevant information and have more convenience traveling to the WDTX than the NDCA. ECF No. 29 at 7. The Court notes that Apple's reply states that the Samsung employees in the WDTX work on unrelated matters, but the Court resolves the conflict of factual matter in favor of Solas. *See Weatherford*, 2018 WL 4620636, at *2; ECF No. 31 at 4.

Although the Court's resolution of factual conflicts in favor of the non-movant here is not outcome determinative, the Court takes this opportunity to address the issue. The Court recognizes the Federal Circuit's concern with the Court's reliance on *Weatherford Tech. Holdings, LLC v. Tesco Corp.* to support drawing all reasonable inferences and resolve all factual conflicts in favor of the non-moving party when assessing a § 1404(a) motion. *In re Apple Inc.*, 2020 WL 3249953, at *2 (Fed. Cir. 2020) (citing *Weatherford Tech. Holdings, LLC v. Tesco Corp.*, No. 2:17-CV-00456-JRG, 2018 WL 4620636, at *2 (E.D. Tex. May 22, 2018)). These factual conflicts and reasonable inferences almost wholly relate to witnesses and documentary evidence, so the Court will focus its attention on this matter. While the Federal Circuit points out that this standard sounds like summary judgment, the Court likens the standard to a motion to dismiss standard. *Id.*; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Similar to a motion to dismiss, the plaintiff's facts are taken as true in order to resolve factual disputes. *See Fernandez-Montez v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993).

However, the Court has not engaged in a "blind deference" to the standard as Apple suggests. Apple Inc.'s Petition for Rehearing En Banc at 6, *In re Apple Inc.*, No. 2020-104 (Fed.

Cir. Jan. 21, 2020). This Court still requires a plaintiff to demonstrate the potential relevance and materiality of potential witnesses and evidence rather than provide mere lists. *See Fintiv, Inc. v. Apple*, *Inc.*, No. 6:18-cv-00372-ADA, 2019 WL 4743678 at *6 (W.D. Tex. Sep. 13, 2019) (citing *Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-cv-693, 2017 WL 4155236, at *5 (E.D. Tex. Sept. 19, 2017)). If this Court were to "blindly defer" to lists of evidence and witnesses, future plaintiffs would simply provide long lists of potential witnesses and evidence in order to counter a transfer motion. *See Fintiv, Inc.*, 2019 WL 4743678, at *4.

This standard for factual disputes also draws another comparison to the motion to dismiss standard as the plaintiff has yet to conduct discovery that could help resolve factual disputes. The information imbalance places plaintiffs at a severe disadvantage especially considering that the location of witnesses and evidence has an impact on at least four of the eight transfer factors. *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008). Without this standard, a defendant need only submit a declaration showing that a majority of relevant material witnesses and evidence are in the proposed transferee district in order to substantially shift the balance of factors in its favor. While this declaration can be factual and made in good faith, a plaintiff has no means to counteract this information beyond publicly available information while the defendant can rely on both confidential and public information.

Moreover, as the Federal Circuit noted, a district court enjoys considerable discretion when assessing the relevance and materiality of potential witnesses and evidence. *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009). "Those principles apply with particular force to a district court's evaluation of whether an individual is deserving of consideration in the willing witness or compulsory process factors." Order Denying Petition for Writ of Mandamus, *In re Apple Inc.*, No. 2020-104 (Fed. Cir. Dec. 20, 2019). Therefore, in accordance with the reasons stated above, the

Court uses its discretion to draw all reasonable inferences and resolve all factual conflicts in favor of the non-moving party when assessing a § 1404(a) motion. *See Weatherford*, 2018 WL 4620636, at *2.

Solas does point to Apple's presence in Austin and to three Apple employees based in Austin with potentially relevant information, but the Court does not find this argument compelling.[2] *See* ECF No. 29 at 6–7. Ultimately, the combination of the location of the third-party suppliers' engineers as well as the greater number of potentially relevant witnesses provided by Apple in NDCA outweighs the Samsung employees and the potential Apple employees with relevant knowledge in WDTX. *See id.* (citing Mirzaie Decl., Ex. G). As such, the Court finds that the location of witnesses weighs in favor of transfer. Therefore, the Court finds that the "relative ease of access to sources of proof" weighs towards transfer.

### b. Availability of compulsory process to secure the attendance of witnesses

The Court considers the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order. *Volkswagen II*, 545 F.3d at 316. A court may subpoena a witness to attend trial only "within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(A); *Gemalto S.A. v. CPI Card Grp. Inc.*, No. 15-CA-0910, 2015 WL 10818740, at *4 (W.D. Tex. Dec. 16, 2015). Similarly, a court may subpoena a witness within the state when the witness is a party, an officer of the party, or a person who would not incur substantial expense when commanded to attend trial. Fed. R. Civ. P. 45(c)(1)(B). Moreover, the ability to compel live

---

[2] The Court notes that while both parties address Apple's presence in Austin regarding a potential mechanical counting of witnesses as a part of the analysis of this factor, this Court has rejected this method. *Fintiv,* 2019 WL 4743678, at *8. Consequently, the Court addresses Apple's presence in Austin in a subsequent factor.

trial testimony is crucial for evaluating a witnesses' testimony. *Aguilar-Ayala v. Ruiz*, 973 F.2d 411, 419 (5th Cir. 1992).

Solas argues that this factor is neutral while Apple argues that this factor is neutral at worst. ECF No. 23 at 8 (Apple); ECF No. 29 at 8 (Solas). Apple contends that none of the relevant third-party engineers are ot within the subpoena power of either the NDCA or the WDTX. Solas counters that two Samsung witnesses actually are located within this Court's subpoena power. ECF No. 29 at 8. According to Solas, the presence of these witnesses in the WDTX pushes the analysis in its favor. While Samsung's witnesses do fall within the WDTX subpoena range, the submission of the witnesses by Samsung signals a willingness to testify. *See id.* at 7. As such, a willing witness nullifies the need for compulsory process. *See id.* Therefore, as no compulsory process is required for this case, the Court finds that "availability of compulsory process" factor is neutral to transfer.

### c. Cost of attendance for willing witnesses

The convenience of witnesses is the single most important factor in the transfer analysis. *In re Genentech, Inc.*, 566 F.3d at 1342. The Court considers all potential material and relevant witnesses. *Fintiv*, 2019 WL 4743678, at *6. However, the Court assumes that no more than a few party witnesses—and even fewer third-party witnesses, if any—will testify at trial, so long lists of potential party and third-party witnesses do not affect the Court's analysis for this factor. *Id.* at *13. The convenience of party witnesses is given relatively little weight compared to non-party witnesses.[3] *See ADS Sec. L.P. v. Advanced Detection Sec. Servs., Inc.*, No. A-09-CA-773-LY,

---

[3] The Court notes Apple's concern regarding the language in *Fintiv*. *See* ECF No. 23 at 8 no. 5 (citing *Fintiv*, 2019 WL 4743678, at *4). The Court stands by giving little weight to the convenience of party witnesses in relation to non-party witnesses, but the Court would like to clarify that the convenience of party witnesses is given some weight. However, the weight only becomes consequential in the absence of a significant number of non-party witnesses. For example, the Court would give more weight to a non-party witness when comparing a non-party witness to a party witness. The Federal Circuit previously reviewed a motion to transfer and took no issue with a district court giving the convenience of party witnesses little weight in relation to non-party witnesses. *See In re Altera Corp.*, 494 App'x. 52, 53–54 (Fed. Cir. 2012).

2010 WL 1170976, at *4 (W.D. Tex. Mar. 23, 2010), report and recommendation adopted in A-09-CA-773-LY (ECF No. 20) (Apr. 14, 2010). "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be travelled." *In re Genentech, Inc.*, 566 F.3d at 1343.

Apple argues that its likely witnesses located in the NDCA face little inconvenience to appear in the same district. ECF No. 23 at 8–9. As they reside closely to the courthouses in the NDCA, Apple's witnesses would face more difficulties appearing in the WDTX. *Id.* For example, the travel would require flights to the WDTX, days as opposed to hours spent away from home and work, and additional meal and lodging expenses. *Id.* In addition, Apple points to the relative ease of travel between major cities in Asia and the NDCA, but a lack of flights to the WDTX. *Id* (citing Exs. 7–9). Similarly, Apple asserts that any potential Solas witnesses would face similar problems as non-stop flights are available from Dublin to the NDCA but travel to the WDTX would require costlier flights with extended travel times and connections. *Id.* (citing Exs. 5–6).

Solas contends that the non-party witnesses located in Asia face "no meaningful difference in relative convenience" in traveling to either the NDCA or the WDTX. ECF No. 29 at 5. In addition, Solas points out that the two Samsung employees living near the WDTX would be inconvenienced by a transfer to the NDCA. *Id.* Moreover, Solas notes that LG and Samsung are already litigating in the WDTX, so a transfer to the NDCA would increase the cost by requiring travel to two districts. *Id.* at 7. Solas argues that the convenience of these non-party witnesses should be "appl[ied] with more force in this case" as Apple purchases the OLED displays from third-party suppliers who are also litigating in this district. *Id.*

The Court considers the cost of attendance for party and non-party witnesses but gives the cost of attendance of non-party witnesses considerably more weight. *See ADS Sec. L.P.*, 2010 WL 1170976, at *4. As mentioned above, the Court finds that the increased travel time to the WDTX for the third-party engineers from Asia is significant. *See* ECF No. 31 at 4 (citing Declaration of John M. Guaranga, Exs. 7–9). Even though Samsung and LG are currently litigating in the WDTX, a transfer to the NDCA would alleviate the cost of time and money as opposed to travelling to the WDTX. *See id.* While Samsung does have employees located near the WDTX, the burden on the third-party engineers located in Asia outweighs the burden on the Samsung employees. *See id.* at 7. The inconvenience to non-party witnesses is enough to weigh in favor of transfer; moreover, the inconvenience to party witnesses for similar reasons would supplement this finding regardless of its less weight. *See ADS Sec. L.P.*, 2010 WL 1170976, at *4. Therefore, the Court finds that the "cost of attendance" factor weighs in favor of transfer.

### d. All other practical problems that make trial of a case easy, expeditious and inexpensive

When examining practical problems, this Court considers problems such as those rationally based on judicial economy which will weigh heavily in favor of or against transfer. *In re Volkswagen of Am., Inc.,* 566 F.3d 1349, 1351 (Fed. Cir. 2009) (*Volkswagen III*). Apple argues that Solas's related action with Samsung in a second district regarding two of the three patents litigated in this case results in this factor being neutral. ECF No. 23 at 10–11. Solas argues that this Court is hearing four other cases regarding one or more patents asserted in this case. ECF No. 29 at 8. In addition, Solas points out that three of the four cases are on a common schedule with a *Markman* hearing set on a date particularly convenient to Apple due to conflicts. ECF No. 29 at 9. Solas argues that a transfer of venue would require an additional district court to construe the patents and require Solas, Samsung, and potentially other suppliers to appear in the additional

13

district. *Id.* Apple asserts that Solas should have been concerned with coordination of location and times when filing suit if it wanted to avoid litigation in a potential third district. ECF No. 31 at 5. With two districts already hearing claims regarding these patents and this district hearing four claims regarding these patents (three of which are on a common schedule), an additional venue would increase the expense and difficulty for parties involved and result in the increased expenditure of judicial resources. *See Volkswagen III*, F.3d at 1351. Therefore, the Court finds that the "all other practical problems" factor weighs heavily against transfer.

### e. Administrative difficulties flowing from court congestion

The relevant inquiry under this factor is actually "[t]he speed with which a case can come to trial and be resolved[.]" *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009). Solas argues that this factor is neutral while Apple argues that this factor is neutral at worst. ECF No. 23 at 11 (Apple), ECF No. 29 at 10 (Solas). Apple points out that the NDCA has a shorter time to trial for patent cases, but this Court is now scheduling patent cases for trial faster than in the past. The Court notes that most recent patent cases in the last few years were likely in the Austin Division. Since the Austin Division has one of the highest caseloads per judge in the country, the overall WDTX time-to-trial is not representative of the time-to-trial in the Waco Division which has a patent-specific Order Governing Proceedings ("OGP"). In the Court's OGP, trial is scheduled to begin forty-four to forty-seven weeks after the Markman hearing. In this case, the Markman hearing is set for August 14, 2020, and the trial is scheduled for April 21, 2021. In addition, the time from filing to trial currently will be 15 months. As such, the Court is well within its OGP while a transfer could substantially impact the expediency of the trial. Moreover, the time from filing to trial is now approximately 42.5 percent faster than previous WDTX cases. *See Uniloc*

*2017 LLC v. Apple Inc.*, 6:19-cv-00532-ADA, ECF No. 72 at 14, 31. Therefore, the Court finds that "the administrative difficulties flowing from court congestion" factor weighs against transfer.

### f. Local interest in having localized interests decided at home

Apple argues that the NDCA has a stronger local interest than the WDTX because Apple's work on the OLED displays, headquarters, and relevant employees as potential witnesses are in the NDCA. ECF No. 23 at 11. Apple also points out that Solas, an Ireland-based company, has no connection to the WDTX. *Id.* Apple also points to a similar decision where this Court favored transfer to the district with interests more closely connected with the issues to be tried. *Id.* (citing *Datascape, Ltd. v. Dell Techs., Inc.*, No. 6:19-cv-00129-ADA, 2019 WL 4254069, at *3 (W.D. Tex. June 7, 2019).

Solas responds that the WDTX has a similar and indistinguishable local interest to the NDCA because Apple's second largest campus with almost 7,000 employees is in Austin and Apple received significant state and local tax benefits to build its second campus in Austin. ECF No. 29 at 11. (citing *Fintiv*, 2019 WL 4743678, at *7). Solas also contends that Samsung and LG Display's litigation in WDTX also represents a local interest. *Id.*

While this Court did grant a transfer of venue in *Datascape*, the Court only granted an intra-district transfer to the Austin Division as opposed to an inter-district transfer.[4] *See Datascape*, 2019 WL 4254069, at *3. In doing so, this Court maintained that both California and Texas have local interests in the case but transferred the case to the Austin Division as the outcome of the suit would have "likely affect[ed] local Austin interests more acutely than local Waco interests." *See id.* The defendant had a clear difference in presence between Waco and Austin since the defendant's headquarters was located in Austin. However, Apple's presence is not so disparate. In

---

[4] Apple did not request in this case that this Court make an inter-district transfer as Dell had in *Datascape* or Apple did in *Fintiv* or *STC. UNM*. *Fintiv*, 2019 WL 4743678, at *1; *STC. UNM*, No. 1:20-cv-00351-ADA, ECF No. 59 at 1.

15

this case, Apple has substantial presences in both the NDCA and the WDTX, so both districts have a significant interest in this case. As such, Apple's presence and its potential witnesses in both districts indicate that the WDTX has a similar localized interest to the NDCA with respect to Apple. Moreover, as discussed in previous orders from this Court, Apple's presence has *significantly* increased in this District. *See Uniloc 2017 LLC*, 6:19-cv-00532, ECF No. 72 at 11 ("Apple has significantly increased its presence in WDTX in the past few years. For example, 7,000 Apple employees work in Austin as of November 2019 which represents an increase from 6,200 employees as of December 2018 and more than a fifty percent increase in the previous five years."). Finally, WDTX has a significant localized interest because of the state and local tax benefits received by and pledged to Apple to build a second campus in Austin.[5] Therefore, the Court concludes that Apple's contribution to this factor is neutral.

The Court also concludes that Solas's contribution to this factor is neutral due to its location outside of the United States. *See* ECF No. 23 at 3. While Solas argues that both Samsung and LG Display litigating in the WDTX represents a localized interest, the Court has already analyzed this issue under the practical problems factor. *See* ECF No. 29 at 10. As such, the discussion of litigation within the WDTX representing a localized interest is improper. In addition, even if the litigation represents a localized interest, both LG Display and Samsung have far greater presences in NDCA which balances with the smaller presence and litigation in the WDTX.[6]

---

[5] Jay Wallis, Christy Millweard, *Apple getting big tax rebate from Williamson County with Austin Expansion*, KVUE.com (Dec. 18, 2019), https://www.kvue.com/article/news/local/apple-could-get-big-tax-break-fromwilliamson-county-with-austin-expansion/269-623955430 (last visited June 18, 2020).

[6] *See Worldwide Global Network*, LG Display, www.lgdisplay.com/eng/company/locationGlobal?placeLocCode=OVE02; *Samsung Strategy and Innovation Center*, Samsung, https://www.samsung.com/us/ssic/location/san-jose-ca/.

Therefore, given that Apple's presence and Solas's absence in both districts is neutral in terms of transfer, the Court finds that the "local interest in having localized interests decided at home" factor is neutral towards transfer.

### g. Familiarity of the forum with the law that will govern the case

Both parties agree that this factor is neutral. ECF No. 23 at 12 (Apple), ECF No. 45 at 10 (Solas). The Court also agrees.

### h. Avoidance of unnecessary problems of conflict of laws or in the application of foreign law

Both parties agree that this factor is neutral. ECF No. 23 at 12 (Apple), ECF No. 45 at 10 (Solas). The Court also agrees.

### i. Conclusion

Having found that the ease of access to relevant sources of proof and cost of attendance factors weigh in favor of transfer, the all other practical problems factor weighs heavily against transfer, the court congestion factor weighs against transfer, and the other factors being neutral, the Court finds that Apple has not demonstrated that the NDCA is "clearly more convenient." *See Volkswagen II*, 545 F.3d at 314 n.10, 315. While the Court is aware that the cost of attendance factor is the most important factor, the Court also recognizes that no factor is dispositive. *See Action*, 358 F.3d at 340. As such, while the cost of attendance factor weighs in favor of transfer, this factor combined with only one other favorable factor and in opposition to two unfavorable factors does not merit a finding of "clearly more convenient." *See Volkswagen II*, 545 F.3d at 314 n.10, 315. Therefore, the Court finds that Apple has not demonstrated that the NDCA is clearly more convenient than the WDTX.

## IV.     Conclusion

It is therefore **ORDERED** that Apple's motion for transfer venue to the Northern District of California is **DENIED**.

**SIGNED** and **ENTERED** this 23rd day of June, 2020.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE